UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERI C. CASH,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>   Defendant. | NO. CV 06-6017 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Jeri C. Cash filed this action on September 27, 2006. On March 13, 2007, the case was transferred to Magistrate Judge Alicia G. Rosenberg. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on March 15 and 29, 2007. On July 17, 2007, the parties filed a joint stipulation ("JS"). The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Commissioner's decision is affirmed.

///
///
///
///

# I.

## PROCEDURAL BACKGROUND

On January 14, 2005, Cash filed an application for supplemental security income benefits, alleging a disability beginning on January 1, 1998. A.R. 12. The Commissioner initially denied the application. *Id.* The Administrative Law Judge ("ALJ") conducted a hearing on May 9, 2006, at which Cash, her daughter, and a vocational expert testified. A.R. 129-52. On May 17, 2006, the ALJ issued a decision denying benefits. A.R. 12-18. On August 29, 2006, the Appeals Council denied Cash's request for review. A.R. 3-5. This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///
///

# III.

# DISCUSSION

## A. Pertinent Legal Standards

### 1. Definition of Disability

"A person qualifies as disabled, and thereby eligible for such benefits, 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### 2. The Claimant's Duty to Prove Disability and the ALJ's Duty to Develop the Record

It is the claimant's duty to prove she is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks omitted). "When the claimant is unrepresented, . . . the ALJ must be especially diligent in exploring for all the relevant facts." *Id.* (citation omitted). "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id.* (citation omitted).

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 460-61 (citation omitted). The ALJ may satisfy this duty by "subpoenaing the claimant's physicians, submitting

questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citations omitted).

### B. The ALJ's Findings

The ALJ found that Cash had the following severe impairments: diabetes, asthma, hypertension, obesity, low back pain, and status post fracture of the right leg. A.R. 14. The ALJ found that Cash had no relevant past work as her "brief work activity in 1995 [was] not substantial gainful activity." A.R. 17. However, he found there were jobs in the national economy she could perform. *Id.*

### C. Whether the ALJ Properly Developed the Record

On August 2, 2005, Cash's daughter completed and filed a disability report for her mother that asked whether there had been any changes in Cash's "physical or mental limitations" since her last disability report. A.R. 89. The daughter wrote "not really, just depressed and irritable, sad, tired pain all the time." A.R. 83. The daughter wrote that the "approximate date" of these changes was May 1, 2005. *Id.* On the same form, in the Remarks section, the daughter also wrote, "I stay depressed, stay sleepy, contintly [sic] in pain. No energy, thinking is not clear to me sometimes, it is hard for me to concentrate and comprehend because I feel sleepy all the time." A.R. 88. On the other hand, the daughter indicated that Cash had not seen and will not see a doctor or anyone else for emotional or mental problems that limit her ability to work. A.R. 84. In her request for a hearing, Cash also stated that "the medication makes me sleepy." A.R. 25.

Cash argues that the ALJ erred by not developing the record about Cash's alleged depression based on the daughter's comments in the disability report. JS 3. Cash also argues that the ALJ should have developed the record about the side effects of her medications. JS 4, 9.

///

4

Based on the record before him, the ALJ did not have a duty to develop the record further about Cash's alleged depression or side effect from medication. The evidence was not ambiguous. Nor did the ALJ find that the record was inadequate.

The medical records do not indicate any symptoms or diagnosis of depression. *See* A.R. 100 (no psychiatric symptoms), 108 (alert and oriented times four), 111 (same). At the hearing, the ALJ asked Cash what "problems" she had that "would limit [her] ability to work." A.R. 136. Cash said nothing about depression. Instead, she reported that she couldn't stand too long on her feet, that her knees "give out," and that she had pain. *Id.* The ALJ also asked Cash's daughter whether there was "[a]nything else you can tell me about your mother's medical problems that would affect her ability to work." A.R. 142. The daughter reported that her mother was unable "to stand for a long period of time," that she had asthma, that she had back problems, lower back pain, and diabetes. *Id.* The daughter said "I think that's about it." *Id.* Additionally, neither Cash nor the daughter mentioned that the side effect of sleepiness limited Cash's ability to work in any way.

Under these circumstances, the ALJ had no duty to develop the record with respect to depression or a side effect of sleepiness. *See Mayes*, 276 F.3d at 459-60.[1] The medical records do not contain any indication of the symptoms or

---

[1] In *Mayes*, the court concluded that the ALJ had no duty to develop the record with respect to Mayes' herniated discs. *Mayes*, 276 F.3d at 459. On May 1, 1997, the ALJ held a hearing in which Mayes testified as to various medical conditions. *Id.* at 457. On June 19, 1997, based on the evidence before him, the ALJ concluded that Mayes was not disabled. *Id.* at 458. In November 1997, an orthopedist found that Mayes had herniated discs. *Id.* The Appeals Council refused to consider the allegedly new evidence. *Id.* Because the evidence of herniated discs was not submitted to the ALJ until after the hearing, the Ninth Circuit concluded that the ALJ had no duty to develop the record further. *Id.* at 459. The court rejected Mayes's argument that "had the ALJ developed the record and established her back condition, he would have found her disabled." *Id.* at 461. As part of the reason for rejecting Mayes's other argument that the "new evidence" mandated a remand, the court found that

5

diagnosis of depression. *Cf. Celaya v. Halter*, 332 F.3d 1177, 1182-83 (9th Cir. 2003) (ALJ should have considered obesity where the existence of obesity was clear from the medical records);[2] *Tonapetyan*, 242 F.3d at 1150 (duty to develop record when ALJ relied on physician who diagnosed depression, found it "difficult to say" whether medical record was complete enough, stated he would "have to see more evidence" before rendering an opinion, and testified a more complete report would change his opinion).[3] Moreover, the daughter's disability report indicated that Cash will not be seeing a doctor or anyone else for emotional or mental problems that limit her ability to work. A.R. 84. Nor do the medical records indicate that Cash reported sleepiness due to medication. Neither Cash nor her daughter testified that depression or sleepiness from medication affected Cash's ability to work. A.R. 136, 142.

**D. Whether the ALJ Failed to Properly Consider the Side Effects of Plaintiff's Medication**

As stated earlier, Cash and her daughter reported that some medications made Cash sleepy. A.R. 25, 88. However, neither stated that this side effect limited or prevented Cash from working. Their comments are insufficient, and the ALJ did not err in not considering the side effects. "There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records,

---

Mayes "failed to show good cause for not having offered the evidence in issue earlier." *Id.* at 462-63.

[2] The Court found that the ALJ should have been alerted to her obesity by her weight and height in her medical records, as well as her appearance at the hearing. *Celaya*, 332 F.3d at 1183 n. 3 ("Even if the ALJ had previously failed to note her height and weight in the record, meeting Celaya in person should have alerted him that, especially given the relationship between obesity, hypertension and diabetes, he should perhaps compute a BMI to facilitate a multiple impairment analysis. In some cases, the presence of a non-asserted disability in the record (e.g., HIV-positive status) might suffice to trigger the need for additional review.").

[3] Given the Court's ruling on the ALJ's duty to develop the record, it follows that the ALJ did not err in failing to discuss Cash's depression. JS 7.

but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001); *see also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) ("The only evidence regarding [side effects were the claimant's] own statements to her doctor and her testimony at the hearing"); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) ("Miller produced no clinical evidence showing that narcotics use impaired his ability to work").

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 21, 2008

_____
ALICIA G. ROSENBERG
United States Magistrate Judge